# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SEBASTIAN GOMEZ TORO,       )
                     )
      Petitioner,         )
                     )
v.                      )     Case No. CIV-26-00315-JD
                     )
MARKWAYNE MULLIN, et al.,    )
                     )
      Respondents.     )

## ORDER

Before the Court are Petitioner Sebastian Gomez Toro's ("Petitioner") Petition for a Writ of Habeas Corpus Pro Se Under 28 U.S.C. § 2241 [Doc. No. 1] and Emergency Motion for Temporary Restraining Order and Non-Transfer Order [Doc. No. 3]. Respondents filed a Response in Opposition to the Petition for Writ of Habeas Corpus. [Doc. No. 9].[1] Petitioner filed a Reply in Support of Petition for Habeas Corpus. [Doc. No. 17].[2]

Petitioner is a citizen of Colombia who most recently entered the United States in October 2020 on a B-2 visitor visa. [Doc. No. 1 ¶¶ 22–23]. Following that entry, he filed an application for asylum. *Id.* ¶ 24. On December 18, 2025, Petitioner was taken into

---

[1] Citations to the filings use CM/ECF designations from the top of district court filings for both page numbers and exhibit numbers.

[2] Petitioner submitted a number of other motions and filings, including (1) an Application for Issuance of Order to Show Cause [Doc. No. 2]; (2) a Motion to Receive Electronic Notice and Request for Courtesy Copies of All Orders and Filings [Doc. No. 4]; (3) an Emergency Motion to Expedite Consideration [Doc. No. 16]; (4) a Motion for Status and Request for Ruling [Doc. No. 18]; and (5) a Notice of Supplemental Authority [Doc. No. 15]. The Court has reviewed and considered each of these filings.

custody by U.S. Immigration and Customs Enforcement ("ICE") following a traffic-related encounter with Border Patrol. *Id.* ¶¶ 26–27. He was later transferred to custody in the Western District of Oklahoma. *Id.* ¶ 27. An immigration judge denied his request for bond, *id.* ¶ 29, and he later filed this Petition, *id.* at 1. Petitioner seeks: (1) a declaration that his detention is unlawful; (2) an order of immediate release or, in the alternative, a bond hearing at which the Government bears the burden of proof to a clear and convincing evidentiary standard; and (3) an order prohibiting transfer. *Id.* at 18–19.[3]

Upon consideration, the Court DENIES the Petition.

## I.    **LEGAL STANDARDS**

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

---

[3] Although Petitioner has not made the Court aware, the Automated Case Information System (ACIS) for the Executive Office for Immigration Review indicates Petitioner was granted voluntary departure on May 8, 2026, with an appeal deadline of June 8, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last accessed May 12, 2026). However, the ICE Online Detainee Locator System indicates that Petitioner is still in ICE custody and detained at Diamondback Correctional Facility within this District as of the date of this Order. *See* https://locator.ice.gov/odls/#/results (last accessed May 12, 2026). *See also Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice . . . .").

Courts employ a liberal construction to the legal sufficiency of pro se pleadings, "applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Even so, the court will not "assume the role of advocate," *id.*, nor will it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74.

## II.     ANALYSIS

Petitioner asserts entitlement to habeas relief in alleged violations of the following provisions: (1) 8 U.S.C. § 1226(a) (Immigration and Nationality Act ("INA")), [Doc. No. 1 ¶¶ 46–55]; (2) the Due Process Clause of the Fifth Amendment for failure to provide a "constitutionally adequate bond hearing," *id.* ¶¶ 56–66; (3) the Administrative Procedure Act ("APA"), *id.* ¶¶ 67–74; and (4) the Fourth Amendment ("Unlawful Seizure"), *id.* ¶¶ 75–80.

Petitioner does not state an INA violation, and his APA and Fourth Amendment claims do not sound in habeas relief. Only his Due Process Clause claim requires in-depth analysis. The Court first explains why the alleged INA, APA, and Fourth Amendment violations do not apply. Then, the Court explains why the bond hearing Petitioner received satisfies the procedural requirements of the Fifth Amendment's Due Process Clause.

### A.      Petitioner fails to state an INA violation.

Petitioner argues that although 8 U.S.C. § 1226(a) governs his detention, the bond hearing he received was statutorily inadequate because (1) the Immigration Judge ("IJ") placed the burden on him rather than the Government; (2) the IJ relied on conclusory assertions of flight risk; and (3) the Government should have been required to justify continued detention by clear and convincing evidence. [Doc. No. 1 ¶¶ 46–55]; [Doc. No. 17 at 3].

Respondents agree that § 1226(a) governs but contend (1) that this Court lacks jurisdiction to review the IJ's discretionary bond determination under 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii); and (2) that the burden-allocation in § 1226(a) and its implementing regulations is statutorily authorized and consistent with precedent. [Doc. No. 9 at 13–15].

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of [their] removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The statute confers the right to seek release on bond before an immigration judge, but it does not prescribe any particular allocation of the burden of proof or evidentiary standard. *Id.* at 306 ("Nothing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on . . . bond'—even remotely supports the imposition of either of those requirements."). Petitioner received the process the statute provides: an individualized bond hearing before an IJ on February 6, 2026, and a subsequent motion to reconsider, which the IJ denied in a written order. [Doc. No. 9-6 at 1]; [Doc. No. 9-7 at 1]; [Doc. No. 9-8 at 1].

On a liberal reading, Petitioner's statutory challenge implicates three questions, none of which points to habeas relief. First, to the extent Petitioner asks the Court to disturb the IJ's individualized determination that he failed to carry his burden on flight risk, the Court has no jurisdiction to do so. 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). Second, to the extent Petitioner contends that the statute itself requires the Government to bear the burden by clear and convincing evidence, the Supreme Court has explicitly rejected that reading. *See Jennings*, 583 U.S. at 306. Third, the implementing regulations themselves also place the burden on the alien. 8 C.F.R. § 1236.1(c)(8); *see In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). Petitioner has not stated an INA violation.[4]

**B.    Petitioner's APA claim does not sound in habeas.**

Petitioner next argues that his arrest and continuing detention constitute "unlawful agency action" under the APA because authorities lacked a judicial warrant or probable cause at inception and his detention now exceeds the regulatory purposes of civil immigration custody. [Doc. No. 1 ¶¶ 67–74].

Respondents press three counterarguments: (1) custody determinations under § 1226(a) are committed to agency discretion by law and therefore exempt from APA review, *see* 5 U.S.C. § 701(a)(2); (2) the Petition identifies no "final agency action"

---

[4] To the extent Petitioner contends that the statutory and regulatory scheme—though authorized by Congress and the Board of Immigration Appeals ("BIA")—violates the Constitution, that argument arises under the Fifth Amendment and is addressed below.

reviewable under the APA; and (3) where a claim seeks habeas relief, it should not also present an APA claim seeking the same relief. [Doc. No. 9 at 23–26]. Respondents are correct.

Where a claim "'necessarily impl[ies] the invalidity' of [the petitioner's] confinement," it "fall[s] within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). This principle is confirmed by the statutory text itself, which precludes an APA claim where there exists an alternate "adequate remedy in a court." 5 U.S.C. § 704. Together, these rules show that an APA challenge is an alternative to habeas, not a ground for habeas relief. Because Petitioner brings a constitutional challenge under habeas, his APA claim is unnecessary and must be denied.

## C.    Petitioner's Fourth Amendment claims do not sound in habeas.

Petitioner argues two theories of unlawful seizure under the Fourth Amendment. Petitioner urges that his December 18, 2025, arrest occurred without a judicial warrant or probable cause, and that his ongoing civil detention is itself an unreasonable seizure absent individualized evidence of flight risk or danger. [Doc. No. 1 ¶¶ 26, 75–80].

Respondents contend that (1) the Fourth Amendment count merely repackages Petitioner's Fifth Amendment due process and APA arguments; (2) Petitioner's admitted overstay of his B-2 nonimmigrant visa supplied probable cause for arrest; (3) immigration officers in fact secured a Form I-200 administrative warrant; and (4) once removal proceedings have commenced, the Tenth Circuit forbids collateral attack on the arrest by way of habeas. [Doc. No. 9 at 26–28].

6

Neither of Petitioner's Fourth Amendment theories prevail. The first targets the lawfulness of his initial arrest. As an initial matter, those allegations do not reconcile with the record. Petitioner concedes that he entered on a B-2 nonimmigrant visa. [Doc. No. 1 ¶ 4]. His I-94 shows he had permission to remain only until April 20, 2021. [Doc. No. 1-10 at 3]. And he admits that he remained in the United States after that date without authorization. [Doc. No. 1 ¶¶ 26–27]. The record also shows that a Form I-200 administrative warrant issued and was served the day of Petitioner's arrest. [Doc. No. 9-5].

The second theory—that ongoing civil detention pending removal is itself an unreasonable seizure—is not properly addressed under the Fourth Amendment once removal proceedings have begun. The Tenth Circuit has held that, once initiated, immigration proceedings "must be allowed to proceed without the intervention of proceedings in the district court challenging the arrest." *Min-Shey Hung v. United States*, 617 F.2d 201, 202 (10th Cir. 1980). The Tenth Circuit's holding in *Luevano v. Holder* further forecloses release as the appropriate remedy, even in the context of a petition for review of the BIA decision where the petitioner claimed his detention and questioning violated his constitutional rights and he requested dismissal of the proceedings against him. 660 F.3d 1207, 1212 (10th Cir. 2011). "Had [Petitioner] shown [a Fourth Amendment] violation, he would be entitled to suppression of the evidence, . . . not . . . dismissal of the proceedings." *Id.* at 1213. The lawfulness of continuing detention pending removal is the province of the Fifth Amendment's Due Process Clause,

addressed in the next section. The Fourth Amendment supplies no independent basis for habeas relief on these facts.

### D.    Petitioner's bond hearing satisfies the Fifth Amendment's Due Process Clause.

The Court turns to the principal issue on which the Tenth Circuit has not spoken: whether § 1226(a)'s regulatory framework for bond hearings violates procedural due process.[5] Upon thorough consideration of other circuit precedents, the Court concludes that the bond hearing Petitioner received comports with the Due Process Clause.

Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause because the bond hearing he received—where he bore the burden of proof—did not provide the "meaningful, individualized" process that due process requires. [Doc. No. 1 ¶¶ 56–66]. Petitioner invokes *Mathews v. Eldridge*, 424 U.S. 319 (1976), and asks the Court to require that the Government justify his detention by clear and convincing evidence. [Doc. No. 1 ¶¶ 64, 66]. This is the sole theory mandating in-depth examination.

Respondents contend that (1) Petitioner's bond hearing satisfied procedural due process under *Demore v. Kim*, 538 U.S. 510 (2003), and *Bell v. Wolfish*, 441 U.S. 520 (1979); and (2) even applying *Mathews*, each factor weighs against the relief sought. [Doc. No. 9 at 16–19, 21–23].

---

[5] Petitioner does not invoke substantive due process, even under a liberal construction. But even if he did invoke the doctrine, the Petition does not tell a story of executive misconduct to a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).

Aliens like Petitioner are entitled to greater protection than those subject to the entry-fiction doctrine. *See, e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). But the Supreme Court has "firmly and repeatedly" made clear that the Due Process Clause still affords aliens fewer protections than it does for citizens. *See Demore*, 538 U.S. at 522; *Reno v. Flores*, 507 U.S. 292, 305–06 (1993). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976). Civil detention pending the resolution of removal proceedings has long been recognized as "a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

Having set the framework, a preliminary question remains: What test applies to this case? Of the five federal circuit courts of appeal to address § 1226(a) bond procedures at the time of the drafting of this Order, four have applied the *Mathews v. Eldridge* balancing test on the merits, while the Third Circuit reserved the question. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Miranda v. Garland*, 34 F.4th 338, 358 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 280 (3d Cir. 2018).

The Court has some doubt that *Mathews*—a procedural due process test forged in the context of disability-benefit terminations—operates properly in this setting. The Supreme Court "ha[s] never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002); *see also Rodriguez Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring) (arguing that the

9

question should be resolved by reference to "the text, structure, and history of the Constitution, rather than through interest balancing"). And the Supreme Court has never applied *Mathews* to a § 1226(a) bond-burden challenge. Still, because every circuit to reach the merits has applied *Mathews* and the outcome would not change, the Court applies it here.[6]

The circuits employing *Mathews* diverge among themselves on three related questions: (1) whether shifting the burden to the Government is ever required; (2) when such a burden shift should occur, if at all; and (3) if a burden shift does occur, what ought to be the evidentiary standard. In short, the First and Second Circuits allow for burden shifting to the Government under at least some circumstances. The Fourth and Ninth Circuits have refused burden shifting altogether.

In *Hernandez-Lara*, the First Circuit announced a categorical rule that "the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)," with clear-and-convincing evidence required for dangerousness and a preponderance for flight risk. 10 F.4th at 39–40. Applying *Mathews*, the court held the first factor cut in the alien's favor because "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 28 (second alteration in original) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001)). On the second factor, the court asserted per se asymmetry: detained aliens lack appointed counsel, lack ready access to records, often face language

---

[6] Moreover, neither party briefed a "text, history, and tradition" approach with any appreciable depth.

barriers, and must "prov[e] a negative." *Id.* at 30–31. The court concluded that "the government is generally far more able to meet the burden of proof on the question of danger than a detained noncitizen." *Id.* at 31. And on the government interest factor, the court found "the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.* at 33.

The Second Circuit reached a similar outcome in *Velasco Lopez*, but only in the setting of prolonged detention. The petitioner had been held for fifteen months without the Government having provided "information sufficient to show that Velasco Lopez was a poor bail risk." *Velasco Lopez*, 978 F.3d at 853. The panel held that his "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," *id.* at 855, and that "a clear and convincing evidence standard of proof provides the appropriate level of procedural protection," *id.* at 856.

Applying *Mathews*, the court found "the first Mathews factor cuts sharply in [the petitioner's] favor," *id.* at 852, in part because the conditions of detention were comparable to those of criminal incarceration, *id.* at 851–52. On the second factor, the court emphasized the same evidentiary asymmetry the First Circuit had identified—the petitioner had been unable to obtain his own DACA file from ICE despite repeated requests. *Id.* at 852–53. On the third factor, the court reasoned that "the longer detention continues, the greater the need for the Government to justify its continuation," *id.* at 855, and that "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight," *id.* at 854. However, the court

11

declined to "establish a bright-line rule" for when detention becomes prolonged enough to trigger the shift. *Id.* at 855 n.13.

In *Miranda v. Garland*, the Fourth Circuit took a different approach on its review of a class-wide preliminary injunction imposing a clear-and-convincing burden on the Government. Writing for the court, Judge Quattlebaum opined that "the detention procedures adopted for § 1226(a) bond hearings provide sufficient process to satisfy constitutional requirements." *Miranda*, 34 F.4th at 346. The court relied heavily on the principle that "[a]liens facing removal proceedings, although entitled to due process under the Constitution, are not entitled to the same process as citizens." *Id.* at 365. On the first *Mathews* "private interest" factor, the court rejected reliance on the *Addington v. Texas*, 441 U.S. 418 (1979), analysis of civil commitment because that case had "involved detention of United States citizens whereas § 1226(a) involves detention of aliens awaiting removal hearings." *Id.* at 359. Given consistent Supreme Court precedent holding that "aliens are due less process when facing removal hearings than an ordinary citizen," Judge Quattlebaum implied that the liberty interest held by the petitioner was less weighty a factor than in analogous cases involving citizens. *Id.* at 361.

On the second factor, the court in *Miranda v. Garland* reversed the structural asymmetry argument the First and Second Circuits had credited: "[A]liens should know as much or more than the government" regarding mitigating evidence on danger and flight risk. *Id.* at 362. The court also catalogued the opportunities § 1226(a)'s existing procedures already afford on opportunity to be heard: an opportunity before the immigration officer; an opportunity for a hearing on bond before an immigration judge

where the alien has an opportunity to present evidence about release, including through witnesses and documents; and an appeal of the decision to deny bond to the BIA. *Id.* On the third factor, the court emphasized that "'control over matters of immigration is a sovereign prerogative,'" noting that "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Id.* at 364 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

The Ninth Circuit followed, holding that "due process does not require the procedures [the petitioner] would have us impose," even after approximately fourteen months of § 1226(a) detention. *Rodriguez Diaz*, 53 F.4th at 1193, 1207. Applying *Mathews*, the court "assume[d]" the petitioner's detention qualified as prolonged but stressed it was "important not to overstate the strength of [his] showing": he had received an initial hearing within two months, could seek redeterminations on changed circumstances, was responsible for much of the detention's length through his own appellate choices, and was subject to a final order of removal. *Id.* at 1207–08. On the second factor, the court rejected the asymmetry argument as fact-bound: the petitioner in *Rodriguez Diaz* had counsel, was English-fluent, and had marshaled considerable evidence. *Id.* at 1212. Moreover, the court concluded that "the existing agency procedures sufficiently protected [the petitioner's] liberty interest and mitigated the risk of erroneous deprivation." *Id.* at 1209. Specifically, the agency's decision to detain the petitioner "was subject to numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker," and "[t]hese procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210 (citation omitted). On the

third factor, the court emphasized that the Government's interests "increase with the passage of time," because "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal." *Id.* at 1208. The court added that "[w]e are aware of no Supreme Court case placing the burden on the government to justify the continued detention of an alien." *Id.* at 1211. Judge Bumatay concurred separately, urging that the question be resolved by reference to "the text, structure, and history of the Constitution, rather than through interest balancing." *Id.* at 1214 (Bumatay, J., concurring).

These decisions reveal a four-way split. The First Circuit shifts the burden categorically, in every § 1226(a) bond hearing. The Second Circuit shifts it only after detention has become prolonged. The Fourth and Ninth Circuits refuse to shift it at all, even when detention is prolonged, though the Ninth Circuit holds open the possibility that a fact-bound evidence and advocacy inequity could change the calculus. Upon consideration of the well-developed record in this specific case, the Court adopts in part the approaches of the Fourth and Ninth Circuits.

> **1.  *Petitioner's liberty interest is significant but limited in the immigration context.***

The first *Mathews* factor concerns the private interest impacted by the governmental action. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a significant liberty interest in freedom from detention. But in the immigration setting, the liberty at stake is "the more limited 'liberty in the United States by someone no longer entitled to remain' in the country." *Montoya v. Holt*, No. CIV-25-

01231-JD, 2025 WL 3733302, at \*14 (W.D. Okla. Dec. 26, 2025) (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis omitted)); *see also Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001) ("[T]he procedural safeguards are minimal because aliens do not have a constitutional right to . . . remain in the United States."); *cf. Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022) (concluding that "the district court failed to recognize and incorporate into its analysis Supreme Court precedent establishing that aliens are due less process when facing removal hearings than an ordinary citizen would have" and noting that "[t]his failure constitutes an error of law").

The Tenth Circuit has not squarely addressed how that contextually limited liberty interest weighs in the bond-burden inquiry now before the Court. As the survey above shows, prolonged detention is the more common predicate for burden-shifting: only the First Circuit applies the heightened burden categorically; the Second Circuit's holding rested on a fifteen-month detention without an end in sight; and the Fourth and Ninth Circuits declined to shift the burden even after a year of detention.

Petitioner has been in immigration custody since December 18, 2025—approximately two months at the time he filed his Petition, and approximately five months as of this Order. [Doc. No. 1 ¶ 26]; [Doc. No. 9 at 11]. That period is well within the six-month window the Supreme Court treated as presumptively reasonable in the more constitutionally fraught context of potentially indefinite detention. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

15

The first *Mathews* factor accordingly weighs less heavily for Petitioner than it might in a prolonged-detention case.

### 2. The risk of erroneous deprivation under the existing procedures is low.

The second *Mathews* factor concerns "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. That risk is low here.

Although Petitioner proceeds pro se, the eighteen exhibits attached to his Petition show he has ample access to evidence. *See* [Doc. No. 1]. He has also filed numerous additional notices and motions, demonstrating his ability to advocate for himself. *See* [Doc. Nos. 1–4, 10, 15, 16–18]. Language is no barrier: his filings are detailed, legible, and in proper English. Moreover, Petitioner received an individualized bond hearing on February 6, 2026, before a neutral IJ, at which he was represented by counsel. [Doc. No. 9-6]. He filed a motion to reconsider through counsel, and the IJ issued a written denial specifically addressing Petitioner's arguments. [Doc. No. 9-7 at 1]; [Doc. No. 9-8 at 1]. And he retains the right to administrative appeal to the BIA from any further adverse custody determination. *See* 8 C.F.R. § 1003.38(b).

The Court need not decide whether to assume, as a matter of law, that alien petitioners have at least equal access to advocacy resources in removal proceedings. Petitioner faces no barriers to proving his case. Existing procedures afford him multiple layers of review and opportunities for custody redetermination upon changed

16

circumstances. The risk of error and value of additional proceedings are therefore low, and factor two favors Respondents.

### 3. The Government's interest in unmodified procedures is substantial.

The third *Mathews* factor weighs "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Government's interest here is substantial.

"[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Supreme Court has "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), and detention pending removal serves the legitimate purpose of "preventing deportable . . . aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," *id.* at 528. The Court has likewise instructed that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.*

Requiring the Government to prove flight risk by clear and convincing evidence at every § 1226(a) hearing would alter the burden allocation that Congress and the BIA have set. *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 C.F.R. § 1236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future

17

proceeding."). Such a rule would shift the costs of evidence gathering onto the agency and lengthen every contested bond hearing, in a system already under considerable strain from a wave of recent challenges. While the First Circuit stated that "the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative," *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021), that reasoning contradicts longstanding Supreme Court dicta and precedent. *See, e.g.*, *Demore*, 538 U.S. at 528. The Government's interest in retaining the existing allocation weighs heavily in favor of the Respondents.

Balancing all three factors, the Court agrees with the Fourth and Ninth Circuits in concluding that, at least on the facts of this case, § 1226(a)'s existing bond procedures supply adequate process.[7]

## III.    CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus [Doc. No. 1].[8] The Court further DENIES AS MOOT the following motions:

1.  Application for Issuance of Order to Show Cause [Doc. No. 2].

---

[7] Because the Court concludes that placing the danger and flight risk burdens of proof on the alien does not offend the Fifth Amendment's Due Process Clause, the Court does not reach the follow-on question of what would be the appropriate evidentiary standards following a burden shift.

[8] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)). *Cf. Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001) ("In holding we may exercise habeas jurisdiction, we emphasize we do so pursuant to § 2241 and need not therefore grant a certificate of appealability as is required in some habeas cases.").

2.  Emergency Motion for Temporary Restraining Order and Non-Transfer Order [Doc. No. 3].

3.  Motion to Receive Electronic Notice and Request for Courtesy Copies of All Orders and Filings [Doc. No. 4].

4.  Emergency Motion to Expedite [Doc. No. 16].

5.  Motion for Status and Request for Ruling [Doc. No. 18].

A separate judgment will follow.

IT IS SO ORDERED this 12th day of May 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

19